IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CSX TRANSPORTATION, INC.,            :

    Plaintiff,                       :

v.                                   :

M/V WAWASAN RUBY, her engines,       :
apparel, etc., in rem,                   Civil Action No. GLR-12-2551
                                     :
and
                                     :
TRIO HAPPINESS, S.A.,
in personam,                         :

    Defendants.                      :

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on proposed Intervenors David Rienas and Ressalina Rienas' (collectively, "Movants") Motion to Intervene. (ECF No. 40). Plaintiff CSX Transportation, Inc. ("CSXT") commenced this action against Defendants M/V WAWASAN RUBY (the "Vessel"), in rem, and Trio Happiness, S.A. ("Trio"), in personam, after the Vessel allided with the Bayside Coal Pier owned by CSXT. The Court, having reviewed the pleadings and supporting documents, finds no hearing necessary. See Local Rule 105.6 (D.Md. 2011). For reasons outlined in specific detail below, the Court will grant in part and deny in part Movants' Motion.

## I. BACKGROUND[1]

On August 25, 2012, the Vessel, destined for a dock located at 6000 Pennington Avenue in Baltimore, Maryland, allided with CSXT's Bayside Coal Pier (the "Pier"). The allision caused substantial damage to the Pier, thereby affecting CSXT's ability to utilize it. The allision also resulted in personal injury to Mr. Rienas, a CSXT employee working on the Pier at the time of the allision.

On August 26, 2012, CSXT commenced this action against the Defendants. (See Verified Compl., ECF No. 1). That day, CSXT also sought a warrant from the Court to arrest the Vessel. (See ECF Nos. 2-10). On August 27, 2012, the parties arranged security for the Vessel via a letter of undertaking ("LOU") in the amount of $22,000,000, which resulted in the release of the Vessel. (See ECF Nos. 12-16). CSXT filed an Amended Verified Complaint on September 26, 2012, seeking relief "for property damage, for loss of revenue, lost profits, and for other damages." (Am. Verified Compl. ¶ 7, ECF No. 27). In that document, CSXT also states "[i]n addition, there is one CSXT employee who alleges injury as a result of the allision."[2] (Id.)

---

[1] Unless otherwise noted, the following facts are taken from CSXT's Amended Verified Complaint, and the Movants' proposed Intervening Complaint. (See ECF Nos. 27 & 40-3).
[2] The original Verified Complaint seeks the same relief and references the same injury. (See Verified Compl. ¶ 7).

On February 15, 2013, approximately seven months after the parties executed the LOU and the Court released the Vessel, Movants filed the pending Motion to Intervene, which includes a proposed four-count "Intervening Complaint" alleging two in rem claims against the Vessel and two in personam claims against Trio. The proposed Intervening Complaint seeks damages associated with Mr. Rienas' personal injuries and the Movants' loss of consortium. Mr. Rienas' personal injury damages allegedly include lost wages, medical expenses, and disabling conditions such as mental anguish and emotional distress. The Movants made no attempts to rearrest the Vessel prior to filing their Motion.

## II. DISCUSSION

### A. Standard of Review

The Movants claim an intervention of right under Federal Rule of Civil Procedure 24(a) and, alternatively, seek a right to permissive intervention under Rule 24(b).

Under an intervention of right,

> "the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

Fed.R.Civ.P. 24(a)(1)-(2). A movant seeking intervention under Rule 24(a)(2) must demonstrate "(1) an interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of the action; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation." Teague v. Bakker, 931 F.2d 259, 260-61 (4th Cir. 1991) (citation omitted).

Conversely, permissive intervention is appropriate "[o]n timely motion" when the movant "(A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Fed.R.Civ.P. 24(b)(1)(A)-(B). The decision to grant or deny a motion to intervene pursuant to Rule 24(b) "lies within the sound discretion of the trial court" although "some standards have been developed to guide the courts in making intervention determinations." Hill v. W. Elec. Co., 672 F.2d 381, 386 (4th Cir. 1982) (citation omitted).

**B. Analysis**

Defendants oppose the Motion as it relates to the Movants' in rem claims against the Vessel, but do not object to their in personam claims against Trio. The Court will deny the Motion as it relates to the in rem claims, but will grant the Motion regarding the in personam claims under Rule 24(b).

4

Although it is readily apparent that the Movants have an interest in the subject matter of this case, compulsory intervention is inappropriate because the subsistence of their in rem claims rest entirely upon a crucial jurisdictional issue. Supplemental Rule E(5) of the Federal Rules of Civil Procedure governs the release of an arrested vessel through the posting of a special bond "to cover the amount of plaintiff's claim fairly stated with accrued interest and costs." Fed.R.Civ.P. E(5)(a). The execution of a bond in admiralty "becomes the res which alone is sufficient to give the court in rem jurisdiction." 2 C.J.S. Admiralty § 156 (2013) (alteration added).

Typically, a special bond is "posted to assure the payment of a single claim, not to stand in place of the vessel for all claims that might be asserted against her." Overstreet v. Water Vessel Norkong, 706 F.2d 641, 644 (5th Cir. 1983). In other words, "[t]he introduction . . . of a new cause of action is something which the sureties are not bound to contemplate . . . ." The Beaconsfield, 158 U.S. 303, 311 (1895). When a "cause of action remains practically the same," however, "a mere change in the name of the libelant, as by substituting the real party in interest for a nominal party, will not avoid the stipulation as against the sureties." Id. at 310-11. Upon the execution of a special bond and the release of the vessel, all subsequent in

rem claims require a new warrant of arrest and a rearrest of the vessel.  The Oregon, 158 U.S. 186, 210 (1895).

Under this standard, the dispositive issue in this matter is whether the Movants may assert their in rem claims under the LOU executed by CSXT and the Vessel.  CSXT avers that the Movants may not utilize the LOU as a res for their in rem claims because the LOU is considered a special bond that only covers the claims before the Court at the time it was executed.  Movants agree that the LOU constitutes a special bond, but aver that they may use the LOU as a res because (1) CSXT sued for personal injury damages, and thus the claim was before the Court at the time the LOU was executed, and (2) the language of the LOU extends the security to them.  The pivotal inquiry, however, is what causes of action were before the Court at the time the parties executed the LOU.  See, e.g., The Beaconsfield, 158 U.S. at 310-11; The Oregon, 158 U.S. at 206; Overstreet, 706 F.2d at 644; Norkin v. The Sister Katingo, 201 F.Supp. 223, 224 (D.Conn. 1962).

In its Amended Verified Complaint, CSXT alleges that its "damages are believed . . . to be in excess of $22,000,000 for property damage, for loss of revenue, lost profits, and for other damages."  (Am. Verified Compl. ¶ 7).  Moreover, CSXT alleges "there is one CSXT employee who alleges injury as a result of the allision."  (Id.)  CSXT goes on to reference the

personal injuries of its employee in paragraphs nine and twenty-six of the Amended Verified Complaint.[3]

Beyond these references, however, there is no indication that CSXT alleges Mr. Rienas' personal injury claim. The Amended Verified Complaint references the LOU as security for CSXT's claims, identifies breaches of duties owed to CSXT, references the damage to CSXT's property, and alleges interference with CSXT's business operations, among other things. (See Am. Verified Compl. ¶¶ 13, 28-29, 35).

Moreover, CSXT asserts that it did not, and could not, assert Mr. Rienas' personal injury claim in either of its Complaints. According to CSXT, its references to Mr. Rienas' personal injuries in the Amended Verified Complaint are merely for recoupment of the payments made to Mr. Rienas under the Longshore & Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901 et seq. (2012), not an attempt to assert Mr. Rienas' personal injury claim. To support this averment, CSXT propounds two arguments: (1) it could not have asserted Mr.

---

[3] The exact language reads: "Thus, the Vessel was scheduled to leave the Port of Baltimore and this District in less than twenty four hours after the subject allision that caused significant damage to the Pier, the equipment on the Pier and the personal injuries alleged by CSXT's employee." (Am. Verified Compl. ¶ 9); "The damages are believed at this time to be in excess of $22,000,000 for property damage, for loss of revenue, lost profits, and for other damages. In addition, there is one CSXT employee who alleges injuries as a result of the allision." (Id. ¶ 26).

7

Rienas' personal injury claim under the LHWCA; and (2) the references to Mr. Rienas personal injuries in its Complaints constitute a Burnside claim, see Fed. Marine Terminals, Inc. v. Burnside Shipping Co., 394 U.S. 404 (1960), which permits CSXT to recover the sum advanced under the LHWCA from a third-party tortfeasor.

As to the first averment, CSXT avers, and Movants concede, that the event that triggers the Act, namely the distribution of a formal compensation award, has yet to occur. See 33 U.S.C. § 933(b). Therefore, CSXT could not have asserted Mr. Rienas' claim under the LHWCA. Secondly, CSXT avers that its Burnside claim is wholly independent of Mr. Rienas' claim because they were only advanced to recoup payment of the sum CSXT made to Mr. Rienas under the LHWCA. Therefore, Movants' averment that CSXT alleged the personal injury claim on behalf of Mr. Rienas is unpersuasive.[4]

Furthermore, CSXT makes no reference to the Movants' loss of consortium claim in the Amended Verified Complaint. Movants' argument that the loss of consortium claim is considered a joint

---

[4] Movants argue that the intent of CSXT is irrelevant to deciding this issue. Although the ambiguous terms of a bond may be construed under the intention of the court, see The Beaconsfield, 158 U.S. at 311, there is no indication that this interpretation extends to the intent of the party drafting the complaint. Therefore, CSXT's intent when filing its Complaints is relevant to determining the claims before the Court at the time the parties executed the LOU.

8

claim under Maryland law is unavailing. See generally Overstreet, 706 F.2d at 641 (affirming district court's denial of intervention when wife of injured seaman sought to assert loss of consortium claims in seaman's personal injury suit).

The Court finds that Movants' claims are not asserted in either of CSXT's Complaints and, therefore, constitute a new cause of action. As a result, the Movants' claims are not covered under the LOU because they were not before the Court when the parties executed the agreement.

### III. CONLCUSION

Accordingly, the Motion to Intervene (ECF No. 40) is GRANTED IN PART and DENIED IN PART. Movants may proceed with their in personam claims against Trio, pursuant to Rule 24(b), but their in rem claims against the Vessel may not. A separate Order follows.

Entered this 10th day of June, 2013

_____/s/_____
George L. Russell, III
United States District Judge